727 A.2d 501 (1999)
320 N.J. Super. 425
STATE of New Jersey, Plaintiff-Respondent,
v.
Duncan H. FARRELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1998.
Decided April 22, 1999.
*502 Bartholomew Baffuto, for defendant-appellant (John Menzel, attorney, Point Pleasant; Mr. Menzel, on the brief).
Robert L. Cerefice, Assistant Essex County Prosecutor, for plaintiff-respondent (Patricia A. Hurt, Essex County Prosecutor, attorney; Mr. Cerefice, of counsel and on the brief).
Before Judges KESTIN, WEFING and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant appeals from a judgment of conviction entered in the Law Division on de novo on the record appeal, R. 3:23-8(a), from the East Orange Municipal Court. The convictions were for driving while under the influence of intoxicants (DWI), N.J.S.A. 39:4-50, and failure to maintain a single lane, N.J.S.A. 39:4-88b. As in the Municipal Court, fines of $250 and $55 and court costs of $30 and $31, respectively, were imposed; and statutory assessments were ordered: $100 Alcohol Rehabilitation and Enforcement Fund, $50 V.C.C.B., and $75 Safe Neighborhood Fund. Enrollment in the I.D.R.C. was ordered and defendant's driver's license was suspended for 180 days. The sentence was stayed pending appeal.
*503 On appeal, defendant raises the following issues:
POINT I THE MUNICIPAL COURT SHOULD HAVE DISMISSED COMPLAINTS AGAINST DEFENDANT BECAUSE THE STATE'S BAD FAITH IN CONDUCTING THE PROSECUTION AND ITS GROSS NEGLECT AND FAILURE TO TIMELY PROSECUTE VIOLATED SUPREME COURT DIRECTIVES, DEFENDANT'S SPEEDY TRIAL AND DOUBLE JEOPARDY RIGHTS, AND JUDICIAL INTEGRITY.
A. CONTINUATION OF PROCEEDINGS VIOLATED THE "60-DAY RULE."
B. ADJOURNMENTS VIOLATED SPEEDY TRIAL PRINCIPLES.
1. DELAY WELL EXCEEDED 60 DAYS.
2. THE STATE CAUSED ALL BUT ONE ADJOURNMENT.
3. FARRELL REPEATEDLY ASSERTED HIS RIGHT TO A SPEEDY TRIAL.
4. FARRELL'S PREJUDICE IS BEYOND QUESTION.
C. ADJOURNMENTS VIOLATED DOUBLE JEOPARDY PRINCIPLES.
D. ADJOURNMENTS COMPROMISED JUDICIAL INTEGRITY AND DISCREDITED RELIANCE ON COURT ORDERS.
POINT II EVIDENCE BASED ON THE TROOPER'S OBSERVATIONS OF DEFENDANT FAILED TO PROVE BEYOND REASONABLE DOUBT THAT DEFENDANT WAS UNDER THE INFLUENCE OF INTOXICATING LIQUOR.
POINT III CONVICTION OF BOTH DWI AND WEAVING VIOLATED DEFENDANT'S RIGHT TO BE FREE OF DOUBLE JEOPARDY IN THAT SUCH A RESULT FRACTIONALIZED CONDUCT COMMON TO BOTH CHARGES AND RESULTED IN MULTIPLE PUNISHMENTS FOR A SINGLE ACT.
POINT IV DEFENDANT WAS ENTITLED TO A JURY TRIAL.
We reverse because of the inexcusably extensive delay in prosecuting the charges to completion: 663 days from the issuance of the summonses through thirteen non-continuous, widely-spaced court sessions.
Defendant was charged on January 21, 1995 by New Jersey State Trooper Michael A. Mattia. An arraignment originally scheduled for February 2, 1995, was cancelled without court appearance. By letter dated February 3, 1995, defendant's counsel, inter alia, entered his appearance and a not-guilty plea, filed notice of several pretrial motions, made discovery requests and proffers, and asserted defendant's constitutional right to a speedy trial. On February 24, 1995, defense counsel acknowledged receipt of some discovery and requested other, missing, matter; and on February 25, he filed and served a brief in support of his motions, including those addressed to the breathalyzer procedures which had been employed and the admissibility of the results. An inordinate number of continuances and lengthy adjournments then ensued.
The parties first appeared for trial before Judge Watson of the East Orange Municipal Court on April 27, 1995, more than three months after the summonses were issued. The municipal prosecutor, Mr. Hodge, who had not yet responded to defendant's motions and brief, sought additional time to meet the motions. Defense counsel consented, and the matter was carried to May 26, 1995, with the judge noting "we're way past the deadline already on it."
On May 26, 1995, the matter came on for trial before Judge Stephens. The municipal prosecutor's office still had not responded to defendant's motions, and State Trooper Mattia had not been notified to appear. Defendant was ready to proceed and again raised the issue of speedy trial, noting "we're well past the 60-day guidelines." Ms. Holmes was the municipal prosecutor assigned to the matter that day and in all the ensuing proceedings but one. She had not seen defendant's motions and supporting brief, and was unprepared to address the issues raised. The trial judge adjourned the matter, noting *504 "the duty upon our prosecutors ... that they have to work their coordination out a little bit better." Defense counsel requested "a deadline with regard to the response [to his motions and brief] and obviously, if there is no brief received by that deadline, I take it the motions would have to be entertained as unopposed." The prosecutor agreed to a thirty-day deadline and the judge ordered it. The matter was continued for forty-nine days, until July 14, 1995.
On July 14, the matter was before Judge Booker. The State's brief in response to defendant's had been received by both defense counsel and the court that very day notwithstanding the thirty-day response period established by the court on May 26. A recently decided Appellate Division case bore upon an argument made by the State responding to defendant's contention that the breathalyzer results were inadmissible, and the court offered defendant additional time to respond, until September 15. The following colloquy ensued:
MR. MENZEL (defense counsel): Your Honor, I could probably reply a response [sic], in fact, if you will permit meI wouldn't mind hoping to see if we could get a Court date before the end of this month, because this case is getting on more than 6 months.
MS. HOLMES (prosecutor): Well if he supplies his reply * * * I'm going to supply mine. * * * I'm going to need * * * additional time as well.
MR. MENZEL: Also, Your Honor, there are unresolved discovery issues in this case and I would like to get that wrapped up because each time we come here, this is my third time here. The State was not prepared to do any of this until today and even today, I don't get the brief until the day of the hearing.
THE COURT: That's why I'm permitting you time.
MR. MENZEL: I understand that, Your Honor, but I'm also suggesting that we may want to deal ... this time with the outstanding discovery issues because there is a letter in my file that is addressed both to the Court and to the Prosecution setting out my specific requests in lightbasically,
acknowledging document by document what I did receive, pointing out what I perceived to be missing in the case and what was needed by the defense to adequately prepare.
I point out to the Court that there is some discovery expressed in part by State v. Ford that has not been provided.
MS. HOLMES: Your Honor, he did get that letter.
* * * *
MR. MENZEL: I think Your Honor has the letter in front on you, I think, from February 24th which sets it out at length.
So Your Honor, the only other thing that I would ask is that I know that there was reference in the State's moving papers to reports being attached to the briefs. I would just like what was attached?
* * * *
MS. HOLMES: Judge, he did send a letter and Mr. Hodge sent a letter back to him indicating that the discovery that was supplied to him is all that the State was going to use in their anticipation of the litigation and that was all that he was required to receive. Mr. Hodge and I had this discussion several times on this case and what was supplied to him was all that Mr. Hodge deemed that he was entitled to receive.
Your Honor with reference to him receiving the brief today. It was my understanding that Judge Stephens instructed me to give the brief by July 14th and that's why I did it today.
MR. MENZEL: I thinkI think we've remedied that.
MS. HOLMES: He said within 30 days, but I gave it today because that was my understanding of Judge Stephen's instructions.
MR. MENZEL: Okay.
THE COURT: September 5th. [sic]
The matter next came before a fourth judge, Judge Frasca, on September 15, 1995. He adjourned the trial because Judge Booker, *505 on July 14, had begun to hear the motion arguments:
THE COURT: I think that it's inappropriate for me to move this case under these conditions. As I would best understand it, there have been certifications under Garth which may be of some interpretation either advisory or perhaps of great probative value and I think that that's a matter for Judge Booker to respond to.
Therefore, I'm going to merely postpone this matter with apologies to everybody for any inconvenience that this has caused.
MR. MENZEL: Your Honor I would just ask that we be notified of a date[.]
* * * *
THE COURT: What are you asking me to do?
* * * *
MR. MENZEL: Give me a target date and if there is a problem
THE COURT: I'm going to give it a date. It will be on that date. If that is not a convenient date for you, or an impossible date, contact your adversary and tell your adversary what you have in mind. If there was a joint request made to Judge Booker, I'm sure he'll respond to it, but I'm going to have to give it a date.
MR. MENZEL: Okay, Judge.
THE COURT: Okay.
MS. HOLMES: Your Honor, just in your consideration of the date, I have both of the Troopers here who have been here all morning, and they've informed me that they will have special details for the Pope, is it? And that will be the first 2 weeks in October. So if Your Honor is inclined to give it a date, I would request that it be later than that.
THE COURT: 27th of October?
UNID. MALE: That's fine, Your Honor.
MS. HOLMES: Is that fine for you, Mr. Menzel?
MR. MENZEL: I would have to check. I don't know until next week. That would be at 9:00 AM? Actually, I would ask for ready, hold at 10. Just for the trial. I don't think that there is a problem here.
MS. HOLMES: No, and you have my number in case it's not good for you?
MR. MENZEL: Yes.
MS. HOLMES: Okay.
THE COURT: October 27th for trial. Motion to be decided prior.
MS. HOLMES: You want to conference?
MR. MENZEL: Yes, outside.
THE COURT: Also, it has come to my attention. I don't know how accurate this is because I don't think that anybody has actually talked to the attorney.
There is some indication that the Attorney General's office may want to either appear or provide information, or otherwise be heard on the motion. That's part of the reason why I don't think that we were in the position to proceed with today's date. Is that correct? You got information with regard to that?
MS. HOLMES: I just have a message saying Steven Munsen called. He is willing to help, Your Honor, but he's going to take more time. He may have to postpone, call him.
THE COURT: It's not necessarily an appearance.
MS. HOLMES: No.
THE COURT: He's willing to deal with you.
MS. HOLMES: Yes.
THE COURT: Okay. All right, you've got to clarify that. Speak to him. No more delays, please.
On October 27, 1995, Judge Stephens was presiding. He adjourned the trial once more, again because Judge Booker had previously begun to hear motion arguments and should be the judge to conclude the matter. In doing so, Judge Stephens rejected defendant's request to hear the motion and decide it. Defense counsel had registered a polite, but vigorous objection to yet another adjournment:
MR. MENZEL: * * * [A]lthough I really would like to accommodate the Court as much as I could, I do have a problem in *506 that this is our fifth time here. My client has been here every time. I now have an expert witness here.
I know the State has hadthe trooper's been here three times and I think ... the State's expert, has been here two times.
And, of course, we're well past any kind of 60 day rule.
THE COURT: Sure. No question.
MR. MENZEL: It's just becoming a great hardship for everybody involved.
And I would appreciate itonce the motions are decided, we're ready to proceed. Four of the motions that are outstanding are really pro forma type motions that I expect will be denied. I have to raise them just in case I get lucky in federal court one day on those issues.
The one real issue that I view in this case that must be decided before trial is the motion for which the briefs have been submitted. That is the one to exclude the breath tests.
I have another motion pending to dismiss the complaint on a very technical ground, which Your Honor may want to entertain.
And then we have a motion to suppress. But again, given the nature of this particular case, my expectation is that even in light of State v. Allen (phonetic), which came down two weeks ago, that the prosecutor and I are probably going to end up stipulating the suppression hearing testimony into the trial.
And so I ask the Court that if the Court is prepared to deal with this today, that we do deal with this today and try to get it resolved once and for all.
Notwithstanding this request, the motion arguments and trial were rescheduled for a day on which Judge Booker would be sitting.
When trial resumed on November 27, 1995, Judge Booker denied defendant's motion to exclude the results of the breathalyzer test. The court disposed of some other pending motions in the case; and, at defendant's suggestion and with his stipulation so that "we can finish this case today[,]" Judge Booker heard testimony from State Trooper Mattia on combined considerations of defendant's motion to suppress and the merits of the charges. During Trooper Mattia's direct testimony, the State sought to use S-5, a breath testing instrument inspection certificate. Defendant objected on the grounds that the certificate, although specifically requested in discovery on February 3, 1995, had not been provided; and that when it was requested a second time, on February 24, 1995, as missing discovery, the State declined to provide it on the basis that the State did not intend using any additional matter not already provided. Rather than ruling on the merits of the issue at the time, the trial court, once again, adjourned the matter:
MR. MENZEL: * * * So, I object to the use of that document at this time, by the State in the middle of the trial, your Honor.
THE COURT: Okay. Mr. Menzel ... is it of your opinion that said failure will extremely prejudice your client's rights to have a fair trial?
MR. MENZEL: Absolutely, your Honor. The entire case preparation effort in this matter is based on the premise that we dealing with only that discovery which the State has provided. It would unfairly prejudice the defense to go through at this time.
We're here to try the case today. As you can see, we're here and there would be undue prejudice and I ask pursuant to ... New Jersey Evidence Rule 807, that this document be excluded.
THE COURT: Prosecutor. It also provides a sanction if ... it hasn't been complied with....
MS. HOLMES: Judge, I can only state what the procedure is, what the State employs when we deal with D.W.I, cases and either myself or Mr. Hodge has sent a letter to the State Police requesting all of the information that pertains to a particular case and the breath testing instrumentsinspection certificates both before and after is routinely provided in the packet of information that comes from the State Police in reference to this case. Now, when the defense counsel made his request for discovery, I, quite frankly, went through the file to make sure that *507 everything that was in my possession, that I deemed to be discoverable, was sent to the defense counsel.
Now, I don't have a copy of what I sent to defense counsel but I'm certain that what I'm relying on today was sent to him.
THE COURT: Okay. So, he is saying that he didn't get and that it was unfair and prejudice his client. Okay. We can remedy that. We will take an adjournment.
MR. MENZEL: Your Honor, I
THE COURT: We will take an adjournment to allow you to review that document and, if necessary, we'll re-convene at another time and ... I can impose appropriate sanctions upon the prosecution if I deem it necessary. If they have failed to comply with your request.
MR. MENZEL:your Honor
THE COURT: What's the problem with that, Mr. Menzel.
MR. MENZEL:well, your Honor I think the appropriate sanctions is exclusion of that document. The reason being is that if we adjourn this case, the only possible purpose for that is for me to permit the State to buttress its case, pursuant to State v. O'Keefe. Although, technically speaking on the double jeopardy issue, it certainly implicates those policies that prohibit double jeopardy and that's you'd be putting on Mr. Farrell.
THE COURT: I'm ... adjourning the case ... to allow you to review the document and take appropriate means to mount a defense. * * * I'm not adjourning it to allow the State to buttress its case. * * * I can ... impose appropriate sanctions for the State's failure to provide you with this, but then I have, also, assertions made by the Prosecutor that she mailed these documents to you.
* * * *
MR. MENZEL:I don't think she said that, Judge. I think she said that she knows her normal procedure. I'm representing to this Court
THE COURT:... Ms. Kim Holmes.
MS. HOLMES: Yes.
THE COURT: Did you send these documents to Mr. Menzel?
MS. HOLMES: Judge, like I stated before, the normal procedure that most prosecutors employ is to turn over all information that we deem discoverable to the defense counsel. Now, the defense counsel has stated that he dealt with Mr. Hodge, initially. Mr. Hodge, being more experienced than myself, as the person who trained me, so I know for a fact that whatever information was sent to me about this case, "The breathalyzer inspection certificates, before and after," that would definitely would be critical to the State's case and that is routinely provided to the defense counsel. Now, he's saying that he didn't get it. I don't know, Judge. All I can tell you is that the State would submit all of the information that was given by the Trooper to the statements for request of discovery and that would definitely go to the defense counsel.
THE COURT: Well, Counsel, there's two options. He's saying that he is going to move . . . that we exclude this document from the case.
MS. HOLMES: And the State would be opposing that.
THE COURT: Okay. That all seems logical. So, the next issue is whether or not this failure to supply this document. . . unfairly prejudices the defense's case and the defense attorney has said, "Yes, it does."
MS. HOLMES: * * * [A]ll the time that we've been discussing this case and it's been going back and forth and back and forth, the defense counsel never even once mentioned that he never received these certificates both before and after.
MR. MENZEL: Excuse me, Judge. I have two letters that say that I
THE COURT: Wait a minute. * * * Hold on. * * * Let her finish.
MS. HOLMES: No, I'm talking about. . . the letter that defense counsel had sent to the Court, that pre-dates the time that the defense counsel has come to this Court. We were here on three separate occasions. In fact, the defense counsel *508 came with his own witness. He never once mentioned that to me that he didn't receive the breathalyzer inspection certificates both before and after and this is a matter of gamesmanship, Judge, we know this and... your Honor also knows the defense counsel is putting on a parade back and forth with the Court about, oh, now, it's a motion to suppress that the State was not aware of and he
MR. MENZEL:your Honor, I'm going to object. That's an improper comment by the prosecutor.
THE COURT: Hold on.
MS. HOLMES: If he didn't receive * * * if he didn't receive these two documents, Judge, the State submits that he should have said something to me beforehand. We're ready for trial and this is the time that he's saying that he never received it.
THE COURT: Okay. Hold on. * * * [T]he defense says ... that he's unfairly prejudiced by the lack of this document that you failed towhat I'm going to do is I'm going to adjourn this. * * * You will supply it to him and he will be given a reasonable opportunity to respond.... December 23rd come back here and finish this trial.
MS. HOLMES: Judge, so that the record is clear, I'm going to go through each one of these documents right now, with the defense counsel so we don't go through this again.
* * * *
MR. MENZEL: ... I understand where the Court's coming from on the adjournment. I would just as soon proceed so not to interrupt the continuity of the trial and discuss whether the appropriate is adjournment or-
THE COURT: Well, I'm going to make that determination. I've made a ruling and I'm going to adjourn this until December 23rd because, obviously, this case is going up and I'm just going to dot ... the I's and cross ... the T's. Thank you.
MR. MENZEL: Your Honor, in that case, ... part of all that you have to consider then, is the balance of the discovery requests made in that letter because part of the prejudice, your Honor, it's the foregoing of the discovery request pursuant to State v. Ford and State v. Hollop (phonetic) as a result of the State's failure to disclose the existence and produce that after certificate.
THE COURT: Okay. Now, you can have sanctions ... because of this.
MR. MENZEL: I understand, your Honor, but the only sanction, I mean, how it talks about money from the Prosecutor. I don't want to line my pocket with the Prosecutor's money?
THE COURT: The 18th. The 18th. Okay? Now, I'm ordering you both to get together,
MS. HOLMES: We're going to do that now.
THE COURT:resolve these discovery issues now.
Trial did not resume when ordered. Rather, the next trial date was three months later, on February 27, 1996. When the case, scheduled for 11:00 a.m., was called at 11:15, defense counsel was not present. Judge Booker noted the presence of defendant himself as well as two State troopers and the prosecutor, and reported:
THE COURT: * * * The problem is that we just received a telephone call from the defendant's lawyer indicating that he's going to be late. [I]t's now 11:15. We also have the further added problem in that we have only one Prosecutor here, as required to covered two Courts, and she has to go start another trial in Judge Poser's Court. So we were hoping that this other case would have started earlier. We would have to adjourn this. We could reach out and call the other attorney and we'll release the State Trooper.
* * * *
We will schedule this for ... 9:00 A.M. April 2nd, and we'll just take no other cases. It will just bethis is a continuance. This is a complicated DWI case involving expert witnesses and all, so we *509 will just have that as the only case in the Court and we could move it.
In a subsequent appearance, defense counsel noted that he had arrived at 11:24 a.m. on February 27, from attending to an older matter in a distant municipality, only to find that this matter had been adjourned once again minutes earlier.
When the matter was called on April 2, 1996, the prosecutor announced that although her breathalyzer witness was present, Trooper Mattia had been injured in an auto accident the day before, and was unable to participate.
MR. MENZEL: Well under the circumstances, I can't reallyI'm going to leave it to the Court's discretion, Your Honor.
THE COURT: I know you need to make your motion. * * * *
And I'll deny the motion, but for your client's purposes.
MR. MENZEL: I'm not even making the motion, because if he's been in the accident
* * * *
THE COURT: I appreciate that.
MR. MENZEL: I do assert my client's rights to a speedy trial. He's been here every time too.
THE COURT: That's correct. When can wecan youyou have no idea.
MS. HOLMES: Well he did leave me a number that I could call him, and that's his home number.
MR. MENZEL: I think that before we even talk about a Court date, Judge, we should probably find out whether he needs time to recuperate.
THE COURT: Okay, do you mind if we notice you in the mail? The Prosecutor is to
MR. MENZEL: Not at all Judge. There are a very few cases in my office thatat this pointthat would not have priority over this one. [sic]
THE COURT: Okay. All right, we'll notify you through the mail. I'm sorry for the inconvenience.
Trial did not resume for more than three months. When the matter came on next, on July 10, 1996, Judge Stephens was presiding. Mr. Hodge reappeared for the State, and stated:
MR. HODGE: * * * Your Honor, this matter was on today scheduled for trial. I think it's a continuation trial. The reason that I have preface my comments, with I think, is because Ms. Holmes the Prosecutor who handled the trial and I understand, that Judge Booker presided over the prior proceedings. I think testimony in fact been taken. [sic]
Defense counsel, objecting to the implicit suggestion that the matter needed once again to be continued, reviewed the desultory history of the case in detail, concluding:
MR. MENZEL: * * * * I have to object today, however your Honor, because obviously we're here for trial. It's the continuation of the trial. Certainly it's dragging on a very long time. I do not know the reason why the State is unable to proceed.
Obviously, the players involved, and by that I mean Judge Booker isn't here and Miss Holmes isn't here, but unfortunately the one that is really paying the price in this is Mr. Farrell.
We have been going through this thing for a long time and at this point we're better than a year and a half on and since there is on-going prejudice to Mr. Farrell by having this thing hanging over his head, certainly the case is getting stale as it gets continued again and again.
The first trial date on November 27th. So, respectfully, Your Honor, I'm going to move at this time to dismiss this charge on the grounds that there has been a failure to prosecute and I also understand that while, I say this respectfully Judge, part of it is probably due to the Court's own scheduling involving Judge Booker, case law suggests specifically, State v. Perkins, and State v. Plasky (phonetic), that delays caused by the Court because the Court is the unit of the Government, must be attributed to the State. On that basis, Your Honor, I think that there is ... at this point, palpable failure to prosecute and on *510 that basis there should be a dismissal of this charge because of the violation of Mr. Farrell's right to a speedy trial, which has been asserted from the very first paper filed in this Court and also asserted on an on-going basis throughout these proceedings.
Prosecutor Hodge responded, in part, as follows:
MR. HODGE: * * * I've listened closely to what my adversary has said, Judge and the history that he recited on the record. It appears that this matter had been adjourned admittedly by the defense due to its own request and I guess the Court graciously accepted those requests. I understand that my adversary has to make this motion and he has to do what he has to do. However, your Honor, in weighing all of the factors, the case law is clear that before a case is dismissed that you weigh the reasons for prior adjournments.
But in summing, I want to make the record clear that the State was ready to proceed today and that isthat should be made known and clear on the record. I don't know what happened with respect to the Court calendar, but from the Prosecutor's side, we were ready to go.
Judge Stephens then spoke:
THE COURT: * * * * I'm not as equipped as I might ordinarily be to handle this since it is a continuation matter.... I do understand. I have a lot of concern for the defendant's rights in this because clearly the matter is moving forward beyond a normal period of time that this case would be heard.
I do not know, I have not spoken with Judge Booker in regard to this matter and so I am not certain where the uncertainty, the mix-up or whatever came to be. However, I think that there has been a record... probably peppered with adjournment requests on both sides of the matter and with regard to the matter where you were.
* * * *
So that I think that probably that there are concerns on both sides of the ledger here. I'm sure that the Judge is equal, being the presiding Judge, I'm sure that he is very concerned about moving this matter along as well, so I would have to think that it was just an unfortunate oversight on his part, or on someone's part. I won't even say on his part. Let me just take that back because I don't know anything about it.
So let me say this though, I'm looking at the calendar for July now, fortunately for us we're early in July and so I have before me the trial schedule for the rest of the month here. Now I know that Judge Booker is going to be sitting throughout the month and I'm looking at some dates now. Unless the Clerk tells me that the particular date is closed, I would like to move itis there any reason why it could not be moved?
After the court and counsel conferred on the record, both the trial and consideration of defendant's motion to dismiss were scheduled to continue before Judge Booker in two months, on September 11, 1996.
On Wednesday, September 11, defendant, his attorney, Prosecutor Holmes and the State's breathalyzer witness were before Judge Booker. The prosecutor advised:
MS. HOLMES: Your Honor, I have received a note from Trooper [Mattia] ... which ... says, "I can't make court on Wednesday 9/11/96 for Duncan Farrell because of Vice President Gore security detail I have."
* * * *
"I tried to get in touch with you on Friday and on Monday, but you had already left for the day. I was on vacation on Friday. I will call you later in the day, but if I don't speak with you, please call me at home. I wanted to give you some notice so you can tell Mr. Menzel and advise him not to come. Maybe we can schedule it for next Wednesday when I am free."
The prosecutor noted that a continuation of Trooper Mattia's direct examination and his cross-examination were essential elements of the case. Defense counsel responded:

*511 MR. MENZEL: * * * I made a motion before Judge Stephens last time to dismiss this case for lack of prosecution. He carried it because, obviously, Your Honor has been more deeply involved in this case than he has.
THE COURT: Okay. Let'sdeny the motion. We have to schedule thisit's just the next time....
* * * *
MR. MENZEL: Judge, just so the record is clear. I mentioned what happened last time. I do move at this time to dismiss for lack of prosecution. This is the 11th time we've been here. It is the fifth time it's been listed since the first day of testimony. In my experience, which is there's a lot there, this is the second most I've ever had to go on a case.
THE COURT: Okay. October 1st. No further adjournments by the State. We're moving it. Schedule this as the only case for me to handle, Mary because this is going to be a long trial. Okay, Mary? The only case.
The October 1 date was adjourned by letter when defense counsel discovered a conflict with an emergent Appellate Division argument. The newly scheduled date, October 16, 1996, at 9:00 a.m., was emphatically established "with no further adjournments."
Judge Booker opened the proceeding on October 16 at 12:15 p.m. with the following statement:
THE COURT: * * * This Court cannot, because of other administrative matters I have to adhere toit's now 12:15 and there's no way humanly possible we can try this case in view of thewe anticipate it's going to be a long trial. The trooper has got to be somewhere at four and you anticipate
Whereupon the prosecutor outlined the State's anticipated proofs, involving the cross-examination of Trooper Mattia and the direct and cross-examination of the State's breathalyzer witness, concluding:
MS. HOLMES-SPROWAL: * * * *  So, Your Honor, I just don't want the case to go on and on and on.
The following colloquy then ensued:
THE COURT: See, we need two straight days of trial on this matter
MS. HOLMES-SPROWAL: With just this case, yes.
THE COURT:with this case and that's what I have to do now. For the record, I have the Administrative Office of the Courts as well as the regional judge pushing that this matter be resolved with some finality with this case. And I now
MR. MENZEL: Judge, just let me correct some comments of the prosecutor. We do have six exhibits marked. They're only marked for identification at this juncture. I do not have a copy of S-6, although I certainly have had an opportunity to review it, but I would like to get a copy before I leave here today.
MS. HOLMES-SPROWAL: That's not a problem, Judge.
MR. MENZEL: And, Your Honor, the matter was listed try or dismiss to the State in light of all the adjournments. Now, October 1st was when it was set and we had had it adjourned ahead of time because of an emergent appeal that I had in the Appellate Division and, unfortunately, that argument was scheduled at a conflict to the trial date on this one. And I know it was then reset to October 4th, tentatively, and then that was changed and we're here on October 16th ready to proceed. I think the State's probably ready to proceed.
But I'd made this comment in an earlier proceeding, Judge, thatand I say this with all due respect that under State v. Perkins and Polaski, the delays attributable to the Court's calendar are attributed to the State. And in light of the delays in this matter, I, respectfully, move that this matter be dismissed at this time.
THE COURT: Go ahead.
MS. HOLMES-SPROWAL: The State opposes that, Judge.
And just to clarify a few things, and I don't want to go back and forth and back *512 and forth because this is what goes on with this case, this case has not beenit should not have been marked try or dismiss because of numerous times on the part of the State. That is not true. If you review the records, each and every time this case was brought to Court, there were plenty of times when the defense counsel could not be here or plenty of time the defense counsel was making motions before the Appellate Division and has asked that the matter be stayed until the Appellate Division ruled on State v. Garth, I believe it was State v. Rapsa (phonetic). There were plenty of times that the case was adjourned on the part of the defense counsel.
The prosecutor then went on to note that Trooper Mattia would be available on November 13 and 14 and that she would subpoena the breathalyzer witness for those days.
THE COURT: ... I'm going to deny the motion, first of all. And this is not marked try or dismiss. This was marked on the 1st of October. We were all ready sitting here ready to go and, Counsel, you had to appear in the Appellate Division. I had even the regional judge upset because we were trying to work your schedule around the Appellate Division so we could try this case.
I don't sit on Thursdays.
* * * *
So, I would prefer to do it the 12th and the 13th.
November 12 and 13 became the agreed-upon dates. Both attorneys committed to their availability and Judge Booker declared:
THE COURT: Now, so we know, this will be the only case this court is doing and I'm doing. I'll have no arraignments, no truancies, nothing.
Judge Booker expressed a firm intention to use all the time available on November 12 and 13 to try the case to conclusion. As the proceeding drew to a conclusion, defense counsel said:
MR. MENZEL: * * * [J]ust to correct the record * * * * [o]ther than October 1st, the only time that I think that an adjournment can be fairly attributable to the defense was on February 27th when I arrived here at 11:24 and for some reason the matter had already been adjourned.
Other than that, Judge, the record speaks for itself.
The matter opened on Tuesday, November 12, 1996, with the prosecutor's announcement that defendant had moved in the Law Division for leave to appeal the municipal court's denial of defendant's motion to dismiss, "on the grounds that (a) continuation of this case violated the `60-Day Rule,' (b) adjournment violated speedy trial principles, and (c) adjournment compromises judicial integrity and discredits reliance on court orders[,]" and that argument on the Law Division motion was scheduled two days thence on Thursday, November 14. Defense counsel responded:
MR. MENZEL: That's right, Judge.
Although, frankly, my position for todayI'm ready to proceed today because the filing of the motion does not deprive this Court of jurisdiction. And I would prefer just to proceed today and finish it up. And we also have tomorrow's schedule that would make the whole motion moot because if we finish the trial, then what happens is I would be in a position where I have to withdraw the motion for leave to file an interlocutory appeal because the trial would be done. It is filed and does not deprive this Court of jurisdiction to proceed and we're ready to proceed. That's why I'm here.
THE COURT: I need direction from the Superior Court Judge. I'm not going to do that without.
MS. HOLMES-SPROWAL: Okay.
THE COURT: There's a motion from the Superior Court Judge, I don't see how we would go forth.
MS. HOLMES-SPROWAL: From what I gather from the law clerk the judge has the papers, but she just got the papers today.
THE COURT: Let me go call the judge.
After a recess, Judge Booker reported:
[THE COURT]: * * * This Court took an adjournment to reach out for Judge Lester, the Criminal Assignment Judge for *513 the county. I've talked to her. She indicates this matter is on ... for a hearing this Thursday at ten. She left it upon me to decide with regards to if I wish to proceed today or proceed with the hearing prior to her ruling or entertaining a motion on the interlocutory appeal.
I think we should proceed with it. I'm inclined to agree with defense counsel, we should proceed with it since there was no request for a stay. Is that correct?
MR. MENZEL: That's right, Judge.
The prosecutor then advised the court that when she learned of defendant's motion for leave to appeal she was uncertain of its impact upon the pending municipal court trial and told Trooper Mattia to await her further telephone call. She had since been told by Trooper Mattia that "he could not be here today. He will be here tomorrow morning at nine o'clock to proceed in this case." Upon inquiry by defense counsel and the court as to the reason why Trooper Mattia was unavailable that day, the prosecutor responded:
MS. HOLMES-SPROWAL: He informed me that he has his child with him. He's three hours away. He did call at 9:20 this morning. I didn't have an opportunity to speak with the defense counsel because he was not here. So we didn't know if the case was going to proceed today or if we were going to Superior Court to argue this leave issue.
The following colloquy then occurred:
MR. MENZEL: Judge, I point out to the Court that these two days, today and tomorrow, were set specially when we were here on October 16th. The trooper was here in Court and I came up with the expectation of concluding this matter.
The reason I filed the motion for leave is, obviously, because of how long this case has dragged out. I was not seeking a stay because, as I said before, I was hoping that by proceeding on the 12th and the 13th, the motion would be mooted. That is not the case. I don't understand why Trooper Mattia isn't here. He knew about the date. The prosecutor knew about the date. There was no stay. We're here ready to proceed.
MS. HOLMES-SPROWAL: I can't even understand, Judge, when the defensewhen did it dawn on him to file this interlocutory motion. Did it dawn on him the day we were in court? Because had he thought about it then, he could have brought it to my attention and, perhaps, this whole interlocutory appeal issue would have never come about.
THE COURT: Well, the motion for interlocutory appeal, it gets the Court off guard with some respect because, procedurally, I didn't know if this Court could proceed further with the hearings in view of the fact that this motion was pending.
In any event, we have reserved these two days to hear this matter. I'm prepared to sit on this matter starting tomorrow from 9:30 untilfor 24 hours, if necessary. We'll just take breaks to go to the restroom as well as to eat and that's it, but this matter has to be concluded.
MS. HOLMES-SPROWAL: It's the State's expectation, Judge, that it will be concluded tomorrow because we know perhaps if it's concluded tomorrow that would avoid this whole appeal issue.
THE COURT: Well, I'm going to presume that the motion is still going to be argued on Thursday, but prior to it being argued, there will be some type of decision on this either not guilty, guilty or dismissed.
MS. HOLMES-SPROWAL: Very well, Judge.
THE COURT: Okay. And if the State's not ready tomorrow, then I'll entertain the motion.
MR. MENZEL: Thank you, Judge.
THE COURT: Okay.
MS. HOLMES-SPROWAL: And if the defense is not ready, can you entertain the State's application for the defense to be held in contempt?
THE COURT: Yes, I will.
The trial resumed the following morning with a review and proffer of the State's six exhibits previously marked for identification. As to S-5, the breath testing instrument inspection certificate number 103-95 dated March 1st, 1995, in respect of which a discovery *514 objection had previously been lodged, defense counsel stated:
MR. MENZEL: * * * And, incidentally, Judge, although I had reviewed that document back in November, I still don't have a copy of it. I'm not going to base an objection on the basis of not getting a copy because I have had a chance to review it, but I would simply renew the objection I had to it back in November.
Defendant objected to S-2 also, but noted no objection to S-3 and S-6. He conducted a voir dire of Trooper Mattia as to S-1 and S-4, as well as to S-5. Following the voir dire, defendant consented to the admission of S-1, and objected to S-2, S-4 and S-5. The trial court excluded S-2 and admitted S-4 and S-5 along with those exhibits to which no objection had been lodged. Defense counsel then cross-examined Trooper Mattia, a year after the trooper's direct testimony had been offered. The cross-examination focused upon the events leading to the trooper's stop of defendant, his observations of defendant, his administration of various sobriety tests, and the circumstances surrounding all.
Following redirect and re-cross-examination of Trooper Mattia, the State rested without presenting its breathalyzer witness. Defendant then testified briefly. After a recess, the parties submitted, and Judge Booker ruled. He reviewed the testimony and the documentary evidence bearing upon the trooper's observations and evaluations, denied defendant's motion to suppress addressed to the stop and arrest, and found defendant guilty of having violated N.J.S.A. 39:4-50 and -88b. Defendant, a first offender, was then sentenced. Execution of the sentence was stayed pending appeal, and defense counsel stated:
MR. MENZEL: Also for the record, Judge, we're going to be calling Judge Lester and I'll be withdrawing my motion for interlocutory appeal.
On de novo on the record appeal to the Law Division, defendant argued the delay issue based on speedy trial and double jeopardy considerations, and the infirmity of the DWI verdict based on observational evidence alone. He also contended that convictions for both DWI and weaving violated defendant's right to be free of double jeopardy, and that defendant had a right to a jury trial.
The speedy trial/double jeopardy issues were addressed first. After characterizing the delay as "exorbitant," Judge Casale summarized the procedural history of the case and concluded that there had been no bad faith on the State's part. He depicted the matter as beset by "unfortunate scheduling problems" attributable to the "court system itself," which led to "extraordinary delay." He concluded, based upon his view of the reasons for delay, however, that "defendant's right to a speedy trial was not violated," and that the adjournments ordered, especially those caused by the State's problems in discharging its discovery obligations, "did not violate double jeopardy principles."
Judge Casale then reviewed the evidence and found that the State had proved, through the evidence of Trooper Mattia's observations, that defendant had been intoxicated at the time he was stopped and that he had failed to maintain a single lane. The judge held defendant's right against double jeopardy not to be violated by separate convictions for both offenses; and he ruled that defendant had no right to a jury trial.
We disagree with the trial court's reasoning and conclusion on the speedy trial/fundamental fairness aspects of the delay issue. See State v. Gallegan, 117 N.J. 345, 354-58, 567 A.2d 204 (1989). Because we conclude on that basis that the charges should have been dismissed, it is not necessary to determine whether the delay also impinged on defendant's double jeopardy interests, see id. at 351-54, 567 A.2d 204, or whether there is any merit to the other arguments defendant has advanced to impugn the convictions.
Excessive delay in completing a prosecution can potentially violate a defendant's constitutional right to a speedy trial as a matter of fundamental fairness, apart from whether double jeopardy standards have been contravened. Id. at 354-55, 567 A.2d 204. In cases arising from municipal court DWI prosecutions, just as with criminal prosecutions, consideration whether the right to a speedy trial has been violated is guided by the four factors announced in Barker v. *515 Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117-18 (1972). Gallegan, supra, 117 N.J. at 355, 567 A.2d 204; State v. Prickett, 240 N.J.Super. 139, 143, 572 A.2d 1166 (App.Div.1990). Specifically, the court must engage in a multi-element balancing process of the four factors: the length of the delay, the reasons for the delay, whether the defendant asserted his right to speedy trial, and any prejudice to the defendant occasioned by the delay. Gallegan, supra, 117 N.J. at 355, 567 A.2d 204; State v. Marcus, 294 N.J.Super. 267, 293, 683 A.2d 221 (App. Div.1996), certif. denied, 157 N.J. 543, 724 A.2d 803 (1998). Delay caused or requested by the defendant is not considered to weigh in favor of finding a speedy trial violation. Gallegan, supra, 117 N.J. at 355, 567 A.2d 204; Marcus, supra, 294 N.J.Super. at 293, 683 A.2d 221. Further, because the evaluative process involves a balancing of considerations, if the other factors weigh heavily enough, a speedy trial violation can be established without an affirmative showing of prejudice to the defendant. See State v. Smith, 131 N.J.Super. 354, 368 n. 2, 330 A.2d 29 (App.Div.1974), aff'd o.b., 70 N.J. 213, 358 A.2d 782 (1976). In a related vein, the defendant's demonstration of prejudice is not strictly limited to a "lessened ability to defend on the merits." Ibid. Rather, prejudice can be found from a variety of factors including "employment interruptions, public obloquy, anxieties concerning the continued and unresolved prosecution, the drain on finances, and the like." Ibid. (citing Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)).
The New Jersey judiciary is, as a matter of policy, committed to the quick and thorough resolution of DWI cases. In 1984, Chief Justice Wilentz issued a directive, later echoed in Municipal Court Bulletin letters from the Administrative Office of the Courts, that municipal courts should attempt to dispose of DWI cases within sixty days. See State v. Fox, 249 N.J.Super. 521, 523 & n. 1, 592 A.2d 665 (Law Div.1991); State v. Perkins, 219 N.J.Super. 121, 124, 529 A.2d 1056 (Law Div.1987). In Gallegan, supra, the Supreme Court suggested that some of the difficulties in concluding municipal court cases with appropriate dispatch arise from "an unavoidable tension between our current governmental structure of part-time municipal courts and prosecutors and the ever-increasing importance of municipal court cases." 117 N.J. at 347, 567 A.2d 204. In Prickett, supra, 240 N.J.Super. at 144, 572 A.2d 1166, we discussed the failure of good management practices in many of the municipal courts. Nevertheless, "in the administration of justice dismissal must be a recourse of last resort." Id. at 147, 572 A.2d 1166. Generally, to the extent appropriate in the circumstances, the assessment of costs as a sanction is deemed to be a more fitting response. Ibid.
We have been loath to sponsor the more severe sanction of dismissal because the demands of justice require adjudications on the merits to the greatest extent possible, see Connors v. Sexton Studios, Inc., 270 N.J.Super. 390, 395, 637 A.2d 232 (App.Div.1994); Yancsek v. Hull Corp., 204 N.J.Super. 429, 433, 499 A.2d 242 (App.Div.1985); but see, State v. Slobiski, 100 N.J.Super. 590, 594, 242 A.2d 858 (App.Div.1968), and because of concerns for the integrity of our statutory scheme governing the operation of motor vehicles. In Prickett, supra, for example, defendant was charged with DWI on December 8, 1988, and trial was set for April 6, 1989. 240 N.J.Super. at 141, 572 A.2d 1166. For reasons not disclosed in the record, the trial was rescheduled for June 22, 1989, the notice stating "No Adjournments Will Be Allowed." On the designated trial date, defendant, his attorney and expert witness appeared and answered the calendar call at 10:00 a.m. They waited through the disposition of other cases until 3:30 p.m., when they learned that the arresting police officer had, a month earlier, been excused from his subpoena obligations by the municipal court clerk. Id. at 142, 572 A.2d 1166. The municipal court denied defendant's motion to dismiss, and the Law Division affirmed. Ibid.
On appeal, we held that the Law Division had properly balanced the speedy trial factors, noting that defendant had made no showing of prejudice except loss of time and money for the appearances of his attorney and expert on the one aborted trial date. Id. at 143-44, 572 A.2d 1166. We concluded, *516 "[c]onsidering defendant is charged with driving while under the influence of alcohol, dismissal should not result here." Id. at 147, 572 A.2d 1166 (citing Administrative Office of the Courts Municipal Court Bulletin Letter # 9/10-85, September/October 1985, for the proposition that "a municipal court judge should not automatically dismiss a drunk-driving complaint when the police officer fails to appear"). We remanded for a determination and imposition of appropriate costs against the State or municipality. Id. at 142-43, 148, 572 A.2d 1166.
In State v. Detrick, 192 N.J.Super. 424, 470 A.2d 933 (App.Div.1983), defendant was charged with DWI on November 25, 1981, and trial was set for December 14, 1981. Id. at 425, 470 A.2d 933. For reasons not apparent from the record, the proceedings were rescheduled for April 1, 1982. Ibid, On April 1, the State was unable to proceed because the arresting officer was on National Guard duty; the court continued the matter until July 12, 1982, at which point the municipal court heard testimony and found defendant guilty. Ibid. On de novo on the record appeal, the Law Division dismissed the complaint, citing State v. Potts, 185 N.J.Super. 607, 450 A.2d 608 (Law Div.1982), as authority.
We reversed, noting that the length of the delay alone was not dispositive in determining whether defendant was denied his right to speedy trial. Detrick, supra, 192 N.J.Super. at 426, 470 A.2d 933. Further, while nearly eight months had elapsed between the issuance of the summons and the resolution of the matter at trial, not all of the time could be charged as "delay." Rather, a significant portion of the time could be "reasonably explained and justified" by a transfer between municipal courts because defendant was a former public official in the charging municipality, and because of the unavoidable absence of the arresting officer. Ibid. Finally, as to the other Barker factors, defendant had made no showing of prejudice and had not asserted his right to speedy trial until the final trial date. Ibid.
In Perkins, supra, defendant was charged with DWI on October 10, 1986, following a car accident in which only he was injured. 219 N.J.Super. at 122, 529 A.2d 1056. Defendant first appeared in municipal court on December 4, 1986, but the State was not prepared to proceed and sought a continuance. Id. at 123, 529 A.2d 1056. The trial was reset for January 8, 1987, and the municipal court judge stated that defendant would be entitled to a dismissal if the State was not ready to prosecute. Ibid. Nevertheless, even though the State was not prepared on January 8 due to a change of prosecutor and subpoena problems, the municipal court denied defendant's motion to dismiss. Id. at 123-24, 529 A.2d 1056.
On appeal, the Law Division dismissed the complaint against defendant. Id. at 124, 529 A.2d 1056. After first noting the Supreme Court's sixty-day directive, the judge stressed that the municipal court had promised that the case would be tried or dismissed on that date. Id. at 124-25, 529 A.2d 1056. He stated that "[a] court's promise is sacrosanct" and must be honored. Id. at 125, 529 A.2d 1056. Accordingly, the municipal court's denial of defendant's motion to dismiss was evaluated as "an arbitrary, and therefore improper" exercise of discretion. Ibid. The municipal court's promises aside, the Law Division judge added, a substitution of prosecutor and failure to subpoena witnesses and otherwise prepare the State's case could not justify the second adjournment. Ibid.
In considering how the foregoing principles and applications bear upon the case at hand we begin with some observations. First, notwithstanding the municipal prosecutor's protestations to the contrary on at least two occasions, none of the delays in this matter were fairly chargeable to defendant. Only two instances are even remotely eligible for such treatment, and neither, on analysis, qualifies. The first was the postponement of trial scheduled for 11:00 a.m. on February 27, 1996, when defense counsel had not appeared by 11:15. The record discloses that defense counsel had telephoned ahead to report that he was detained by an older case elsewhere, and he appeared at 11:24. The municipal court judge's statement on the record in adjourning the case so quickly, rather than carrying it and attending to other matters *517 a little while longer, evinces too little flexibility in accommodating defense counsel's announced scheduling conflict, and bespeaks a practice of using any disruption of schedule as an excuse for postponing the trial of the matter. Especially considering that this event occurred when the case was already 404 days old, the adjournment was intolerable. The second instance of delay not attributable to the court or the State arose from defense counsel's responsibility, on October 1, 1996, to attend to an emergent matter in the Appellate Division. There is no way that can be considered an instance of delay chargeable to defendant.
Next, the remaining twelve postponements must be evaluated by the standard employed in Detrick, supra, 192 N.J.Super. at 426, 470 A.2d 933, i.e., whether they were "reasonably explained and justified." By this measure, those that can be excused in evaluating defendant's speedy trial entitlement are few and far between.
Only two of the seven adjournments chargeable to the State can be seen as "reasonably explained and justified": those required when Trooper Mattia was unavailable because of an injury and when he was assigned to a special security detail. The others were based on the State's unreadiness to proceed or its failure to discharge its discovery obligations in a timely manner.
And then there are the inordinate delays attributable to the municipal court itself. Even though Judge Booker had begun to try the case with arguments on defendant's motions on July 14, 1995, fully 174 days after the summonses had issued, the matter was adjourned before it could be completed; and it was further postponed on three subsequent listingsafter a series of extended continuances, including peremptory-type listings, see Perkins, supra, 219 N.J.Super. at 125, 529 A.2d 1056for it had been erroneously listed before other judges, who were required to defer to Judge Booker because he had already commenced the trial. Even after the testimonial phase of the matter began on November 27, 1995, when the case was 312 days old, it took another 351 days to complete. And once, on October 16, 1996, when the matter was already 635 days old, Judge Booker himself adjourned it because of other, undefined "administrative matters" that diverted his attention.
The numerous adjournments must be considered together with the extensive intervals between proceedings, a manifest responsibility of the municipal court. The first court proceeding was held on April 27, 1995, ninety-six days after the summonses were issued. This was followed by serial hiatuses until the testimonial phase of the trial began of: thirty-one days, forty-nine days, sixty-five days, forty-two days, and thirty-one days. After testimony commenced, there followed a series of further adjournments until trial resumed for its last two days for: ninety-two days, thirty-four days, ninety-nine days, sixty-three days, twenty days, fifteen days, and ten days. It seems fair to conclude that the municipal court was impelled by no adequate sense of urgency or responsibility to conclude the matter expeditiously.
As a general rule in applying the evaluative features of the four-part test of Barker in fundamental fairness terms, delays of scheduling and other failures of the process for which the trial court itself was responsible are attributable to the State and not to the defendant. 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 ("A more neutral reason [than the State's delay of trial in order to hamper the defense] such as negligence or overcrowded courts should be weighed less heavily [against the State] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."). See also Gallegan, supra, 117 N.J. at 351-58, 567 A.2d 204; Prickett, supra, 240 N.J.Super. at 144-47, 572 A.2d 1166; Perkins, supra, 219 N.J.Super. at 124-27, 529 A.2d 1056.
The delays here were excessive, far greater than those in Gallegan, Prickett, Detrick, and Perkins. Defendant continually invoked his right to speedy trial, at the outset and on eight ensuing occasions. Except for reasons bearing upon the State's failure to discharge its discovery obligations in a timely fashion, as well as the State's unreadiness to respond to defendant's motions, defendant was, at all times, prepared *518 to proceed; and, at appropriate times, he moved formally for dismissal on the ground that speedy trial principles had been violated. See State v. Smith, supra, 131 N.J.Super. at 363-64, 330 A.2d 29.
As for the prejudice to defendant, while it does not appear that the delay hampered his ability to defend the case on the merits, the number of adjournments undoubtedly caused defendant to incur counsel or expert witness fees and other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances, considerably more than occurred in Prickett, where a single aborted appearance by counsel and an expert witness on a "peremptory" trial date was deemed to be remediable by the assessment of costs against the State. 240 N.J.Super. at 147-48, 572 A.2d 1166. Effects on the ability to defend and monetary costs to defendant are only some elements of recognizable prejudice, however. Even so, as we have already noted:
Although prejudice resulting from a delay is a factor mentioned by Barker to be considered in determining speedy trial claims, an affirmative showing thereof is not a necessary element in the proof of denial of the constitutional right to a speedy trial. In short, a violation of an accused's right to a speedy trial can be proven even in the absence of a showing of prejudice.
Moreover, prejudice to a defendant resulting from delay is no longer confined to inability or lessened ability to defend on the merits. Prejudice can also be found from employment interruptions, public obloquy, anxieties concerning the continued and unresolved prosecution, the drain on finances, and the like. Moore v. Arizona, supra.

[Smith, supra, 131 N.J.Super. at 368 n. 2, 330 A.2d 29.]
In balancing and applying the four factors of Barker, we conclude that the delay in completing this case, far beyond what was reasonable, was plainly excessive; and that the reasons for the delay were the prosecution's clear inattention to its responsibilities along with the municipal court's patent failure to prepare itself to try the matter expediously and shepherd it to resolution efficiently. These shortcomings were so egregious that no showing of prejudice is required in order for this defendant to succeed on his argument that, in fundamental fairness terms, he was denied his adequately asserted right to a speedy trial. Ibid. As a matter of logic and decency, given that the four factors of Barker call for a balancing of considerations, when the delay in concluding a trial is excessively long by any measure, as here, the burden upon defendant to satisfy the other factors is correspondingly diminished. When there is no reasonable explanation or justification for the excessive delay, speedy trial principles have been violated.
The failures of the process in this matter so far surpassed those previously described in the cases we have analyzed as to mandate a different result. We conclude that, here, the denial of fundamental fairness was so great, and the integrity of the judicial process so crippled, as to require that the convictions be vacated.
Reversed.