**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3443-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BASILIS STEPHANATOS,

     Defendant-Appellant.

_____

Submitted November 15, 2021 – Decided February 23, 2022

Before Judges Sabatino, Rothstadt, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-09-0810.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant Basilis Stephanatos appeals from his 2019 conviction by a jury of having committed the fourth-degree offense of causing or risking widespread injury or damage, N.J.S.A. 2C:17-2(c), and from his sentence to three-years non-custodial probation. The conviction stems from the events of June 28, 2011, when, after Sheriff's officers attempted to execute a writ of possession, defendant locked himself inside his home with weapons for several hours before surrendering possession.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE TRIAL JUDGE ERRED WHERE HE FOUND AS A MATTER OF LAW THAT DEFENDANT WAS A "PERSON" TO WHOM N.J.S.A. 2C:17-2 APPLIED IN ITS DEFINITION OF THE NUMBER OF "PEOPLE" TO BE INJURED IN ORDER TO CAUSE "WIDESPREAD INJURY OR DAMAGE."
>
> POINT II
>
> THE TRIAL JUDGE ERRED WHERE HE REVOKED DEFENDANT'S RIGHT OF SELF-REPRESENTATION.
>
> POINT III
>
> THE TRIAL JUDGE'S DENIAL OF DEFENDANT'S SPEEDY TRIAL MOTION WAS CLEARLY ERRONEOUS.

In a Pro Se Supplemental Brief he also argues the following points that we have renumbered for clarity:

POINT [IV]

THE TRIAL COURT COMMITTED A HARMFUL ERROR BY RULING THAT THE VOID AB INITIO EX-PARTE WRIT WAS NOT ILLEGAL AND PREVENTED DEFENDANT FROM TESTIFYING ABOUT THE VOID WRIT. (RAISED BELOW).

1. DISCOVERY OF THE EXTRAORDINARY EVIDENCE THAT THE EX-PARTE WRIT ENTERED ON MAY 13, 2011 . . . WAS VOID AB INITIO.

2. THE TRIAL COURT DID NOT MAKE SUFFICIENT FINDINGS IN SUPPORT OF ITS DECISION TO DENY THE OMNIBUS MOTIONS IN THEIR ENTIRETY.

POINT [V]

THE TRIAL COURT COMMITTED A HARMFUL ERROR BECAUSE IT PREVENTED DEFENDANT TO TESTIFY AT TRIAL ABOUT HIS STATE OF MIND, THUS USURPING THE JURY'S ROLE IN DECIDING THE ULTIMATE ISSUE OF THE RECKLESSNESS STATE OF MIND OF THE DEFENDANT THAT WAS ONE OF THE REQUIRED ELEMENTS UNDER N.J.S.A. 2C:17-2C. (RAISED BELOW).

1. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER LARGER RELEVANCY CONCEPTS WHEN

3

EVALUATING THE PROFFERED TESTIMONY OF [DEFENDANT].

2.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO COMPARE "RECKLESS" WITH OTHER MENTAL STATES AFTER THE JURY REQUESTED CLARIFICATION.

3.     VIOLATION OF THE PRESENTMENT CLAUSE, N.J. CONST. ART. I, PAR 8.

POINT [VI]

THE TRIAL COURT COMMITTED A HARMFUL ERROR BECAUSE IT DENIED THE DEFENSES OF MISTAKE OF LAW OR FACT.  (RAISED BELOW).

1.     THE TRIAL COURT ERRED BY PREVENTING THE DEFENDANT TO COLLATERALLY ATTACK THE JUDGMENT OF FORECLOSURE AND ASSOCIATED ORDERS.

2.     THIS CASE FALLS WITHIN AN EXCEPTION TO THE COLLATERAL BAR RULE AND THE TRIAL COURT HAS ERRED BY FAILING TO CONSIDER THE EXCEPTIONS.

POINT [VII]

THE COURT ERRED BY STATING THAT NO WARRANT FOR REMOVAL FROM A RESIDENTIAL PROPERTY WAS REQUIRED UNDER THE TAX SALE LAW.  AN LLC CANNOT TERMINATE A RESIDENTIAL OCCUPANCY UNDER NEW JERSEY'S TAX SALE LAW. (RAISED BELOW).

4

POINT [VIII]

UNDER THE DOCTRINE OF CUMULATIVE ERRORS, A NEW GRAND JURY SHOULD HAVE BEEN BE [SIC] CONVENED PURSUANT TO STATE V. ORECCHIO, 16 N.J. 125, 129 (1954). (RAISED BELOW).

1. THE LAW ON PERJURY BEFORE A GRAND JURY.

POINT [IX]

THE TRIAL COURT ABUSED ITS DISCRETION DURING SENTENCING BY PRESENTING FACTS NOT PRESENTED AT TRIAL; BY WRONGFULLY STATING AND WITHOUT ANY FACTUAL BASIS THAT [DEFENDANT] HAD A DISDAIN FOR POLICE OFFICERS; THAT DEFENDANT HAD MADE "THREATS" TO PEOPLE; THIS WAS CONTRARY TO THE PRE-TRIAL RULINGS BY THE TRIAL COURT THAT NO THREATS WERE EVER MADE. (RAISED BELOW).

1. THE TRIAL COURT MADE ERRONEOUS STATEMENTS ABOUT THE PAYMENT OF TAXES THAT ARE NOT IN THE RECORD AND THEY ARE NOT TRUTHFUL OR ARE NOT BASED ON COMPETENT, CREDIBLE EVIDENCE.

2. THE TRIAL COURT FAILED TO CREDIT [DEFENDANT] FOR THE 68 DAYS SPENT IN THE BERGEN COUNTY JAIL. [ANOTHER] JUDGE . . . ALREADY HAS RULED THAT JAILING WAS IN VIOLATION OF [DEFENDANT'S] FIRST AMENDMENT RIGHTS.

5

3.    THE COURT FAILED TO CONSIDER MITIGATING FACTOR 1 AND MITIGATING FACTOR 2 DURING SENTENCING. STATE V. DALZIEL, 182 N.J. 494, 502 (2005) (HOLDING THAT TRIAL JUDGES DO NOT HAVE "DISCRETION TO REJECT A MITIGATING FACTOR ALTOGETHER" DESPITE "EVIDENCE IN THE RECORD").

4.    DOUBLE COUNTING AND DOUBLE JEOPARDY PROHIBITED DURING SENTENCING. AN ELEMENT OF THE OFFENSE MAY NOT BE CITED AS AN AGGRAVATING FACTOR TO INCREASE PUNISHMENT.   NO COMPETENT AND RELEVANT EVIDENCE WAS USED TO ANALYZE THE AGGRAVATING FACTORS.

5.    MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE ARE STRICTLY PROHIBITED.

6.    IT IS ALSO APPARENT THAT THE TRIAL COURT MISTAKENLY FOUND AGGRAVATING FACTORS, 3, 8 AND 9 BY RELYING "HEAVILY ON THE FACTS OF THE VERY OFFENSES THAT DEFENDANT WAS ACQUITTED ON[.]"   STATE V. ANTHONY, APPELLATE DIVISION (JANUARY 19, 2016).

POINT [X]

THE COURT COMMITTED HARMFUL ERROR BY FINDING THAT THE DEFENDANT HAD NO POSSESSORY RIGHTS AND REASONABLE EXPECTATION OF PRIVACY IN HIS FULLY-OWNED PROPERTY.  (RAISED BELOW).

POINT [XI]

THE APPLICATION OF THE VAGUE AND OVERBROAD STATUTE N.J.S.A. 2C:17-2C TO THE PRESENT CASE REPRESENTS ARBITRARY ENFORCEMENT, VIOLATING THE DUE PROCESS CLAUSE BECAUSE THE STATE LEGISLATURE DID NOT INCLUDE IN THAT STATUTE REFUSAL TO VACATE A HOME AS A PUNISHABLE FELONY OFFENSE. (RAISED BELOW).

We are persuaded that the almost eight-year delay in bringing defendant's matter to trial violated his right to a speedy trial. For that reason, we reverse the denial of his 2018 motion to dismiss the indictment on that basis and vacate his conviction.

I.

The facts leading to defendant's conviction are summarized as follows. By 2004 defendant had fallen into arrears in the payment of property taxes for his home in Wayne Township. In 2005, the township sold the associated tax sale certificate to a third party, which by 2008 began the process of foreclosing on the property. In the ensuing litigation, the then-Chancery judge stayed the proceedings to allow defendant to file an action against the township challenging the taxes owed. That action was ultimately dismissed with prejudice in 2010 and the Chancery action resumed. In April 2010, the

Chancery judge struck defendant's responsive pleading and directed that the matter proceed as uncontested. The matter proceeded to judgment after the Chancery judge gave defendant an additional opportunity to redeem, which he failed to do.

A writ of possession was issued in May 2011, which the Passaic County Sheriff scheduled for execution on June 28, 2011. The Sheriff's office knew that defendant had vigorously defended against the foreclosure and that he possessed several weapons. With that knowledge, four officers were sent to defendant's home to execute the writ.

In response to the Sheriff officers' attempt to execute the writ, defendant approached them from inside his home with a rifle in his hand. In accordance with their office's protocols, the officers safely retreated from the home and retrieved their weapons from their cars where they remained. They then called for assistance from hostage negotiators, a special weapons and tactics (SWAT) team, and a bomb squad. The requested back-up responded within a half hour.

In the meantime, while inside the house, defendant called the Chancery judge, who took the call on the record. Defendant asked that the judge "stay the eviction." In response, the judge asked that he leave the house and speak to the officers. Defendant was displeased with her response and told her that

"the only way he was coming out of the house was dead" and that "there was going to be bloodshed." Defendant made these statements "[a] number of times."

According to defendant, he "panicked" and told the judge "there's going to be bloodshed today" because he "thought [he was] going to be shot." He also stated, "You've got to be kidding me, as I said, only dead I will be coming out of this home," and later, "[T]his is not going to happen, okay? Only dead will I come out of this home." He explained that he made these statements because he "was afraid [that was] going to happen" since armed officers were outside. Defendant said he was not holding the rifle to frighten anyone, never pointed or displayed any weapon at anyone, or threatened anyone and did not intend to cause anyone harm.

After defendant spoke to the judge, a Sheriff's officer made telephone contact with defendant. The officer stayed on the phone with him for several hours, urging defendant to leave the house. During the call defendant was very emotional and angry. He expressed concern that he was going to get hurt, despite the officer's assurance that if he came out no harm would come to him. Eventually, defendant left the house and cooperated with the officers. He was placed under arrest and his weapons were removed from the house.

9

In September 2011, defendant was charged in Passaic County with possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count one); two counts of aggravated assault of a law enforcement officer by knowingly pointing a firearm, contrary to N.J.S.A. 2C:12-1(b)(9) (counts two and three); recklessly creating a risk of widespread injury or damage, contrary to N.J.S.A. 2C:17-2(c) (count four); and hindering apprehension, contrary to N.J.S.A. 2C:29-3(b)(2) (count five).

Shortly thereafter, defendant was briefly represented by one attorney but soon replaced him with another privately retained counsel. From 2011 through 2017, defendant's criminal case was assigned to a series of seven different judges. During that period, defendant filed numerous motions seeking various relief. Many of his pro se submissions attacked the underlying judgment in the civil actions, individual members of the Sheriff's department, and judges involved in his case. At some point prior to 2016, a judge directed that his continued filing of pro se submissions would be considered a violation of the conditions of his bail.

Among those motions that defense counsel filed, was a 2013 motion for a change in venue. In addition, defense counsel made numerous successful requests for adjournments, many based on counsel's health issues and others

due to schedule conflicts. And, while the venue motion was still pending, in October 2015, defendant submitted a pro se "omnibus motion," seeking dismissal of the indictment and other relief on various grounds, including that his right to a speedy trial had been violated, which he supported with complaints about delays caused by his attorney and the court, not the State.

Four years after the change in venue motion was filed, one of the judges granted it on December 26, 2017, without deciding the still pending "omnibus motion," and transferred the matter to Bergen County. After the transfer, defendant refiled the "omnibus motion," and several other motions that were heard and decided by the trial judge in Bergen County before defendant's trial began in January 2019. On February 4, 2019, the jury found defendant guilty of the one count in the indictment but not guilty of the remaining counts. The trial judge later sentenced defendant to three years non-custodial probation and imposed a $7,500 fine. This appeal followed.

## II.

Because the time between defendant's arrest and his trial was inordinate, we turn our attention first to defendant's arguments about the violation of his right to a speedy trial. Defendant argues in Point III of his brief that the trial judge, in denying his motion for dismissal on speedy trial grounds, improperly

A-3443-18

relied upon the fact that defense counsel asked for many adjournments. According to defendant, the attorney's adjournment requests accounted for less than half of the adjournments in the case, and the State and the judges previously assigned to the case were responsible for the rest. Defendant further argues that he suffered "significant harm," because: 1) he "los[t]" his chosen attorney, who he argues could have represented him at trial if it had happened earlier; 2) his financial resources were "severely stretched" by legal fees; and 3) he lost income and experienced "anxiety and humiliation" due to the lingering charges against him.

A.

According to defendant, he first addressed the issue of the delay of his trial in April 2014, when he wrote to the court "urging [it] to promptly proceed with the case."[1] He expressed concern that it had taken "more than a year to rule" on his still undecided February 20, 2013 motion to change venue, and stated that he "suffered significant economic and non-economic damages . . . every day this case [was] delayed." The letter did not prompt any action by the court.

---

[1] The letter in which this was said is not included in the record, but is discussed by defendant in his later October 12, 2015 letter to the court.

A-3443-18

As previously mentioned, on October 12, 2015, four years after the indictment was issued, and while the 2013 venue motion was still pending, defendant filed a forty-seven-page letter as a pro se "omnibus motion" complaining about his attorney causing delays in his case, raising questions about the veracity of the attorney's health issues, and asking that the indictment be dismissed on several grounds, including that his speedy trial rights had been violated. In his letter, defendant complained that there had been "no end to the lengthy and inexcusable case delays" caused by the court and by his counsel. He said his lawyer had been "attending other clients in federal court," and that he had made "numerous inquiries and complaints about these unacceptable delays" to the attorney. He concluded by stating, "since there is no end to the lengthy and inexcusable case delays caused by this court and by [my attorney] (in violation of my speedy trial rights), my family and I have decided to remove [my attorney] from representing me before this court." He also suggested that his venue motion, which had been pending for two years and eight months, was "simple" and should have been decided. None of the assigned judges entered any orders in response to the omnibus motion and, despite defendant's assertions, his attorney continued to represent him.[2]

_____

[2] On March 18, 2016, during oral argument on the State's motion to revoke

As noted earlier, defendant's motion for change of venue was not granted until December 26, 2017, four years and ten months after it was filed. The order stated that the reason for the transfer to another vicinage was that since a retired, former judge—presumably the vicinage's Chancery judge—was going to be a witness in the case, there was a need to "ensure the absence of any appearance of impropriety." No other aspect of defendant's omnibus motion was addressed by the judge issuing the order.

As also already noted, after the change in venue, in March 2018 defendant refiled his omnibus motion, including his speedy trial claim. The trial judge in Bergen County denied defendant's omnibus motion on May 24, 2018.[3] He also set a peremptory date of August 6, 2018, for the trial to begin.

_____

bail based on defendant submitting pro se papers to the court in violation of a bail condition, one of the Passaic County judges stated that although he did not address defendant's motion for change of venue with an order, he had "informally advised [c]ounsel" that he "wasn't going to be granting that" and that defendant's filing of motions other than through counsel that had been drafted by defendant, who "tr[ied] to have them appear to be submissions of [c]ounsel," violated the judge's directive from "two years ago" that he would not consider pro se submissions, and that defendant's continued attempts to represent himself and to obtain a change of venue were "only guaranteed to cause this litigation to last much longer." The result of the motion was that defendant's bail was revoked and he was referred for a psychiatric evaluation.

[3] At a conference held by the trial judge in February 2018, defense counsel reviewed in detail his serious health issues that prevented him from continuing

In denying the portion of the omnibus motion concerning defendant's speedy trial claim, the judge "acknowledge[d]" that "this matter [had] been in the system for too long." He addressed the four Barker[4] factors for determining speedy trial issues in some detail. For the first factor, the judge found that there was "no doubt that the length of the delay [was] substantial," stating that it was "almost unconscionable[] that a matter in the State [c]ourt system [was] now in its seventh year or eighth year before being resolved." The court found that factor one "weigh[ed] heavily in favor of the defendant."

Concerning the second factor, the reasons for the delay, the judge stated that he had accessed the judiciary's Promis/Gavel System to view a listing of all actions taken and proceedings scheduled in this matter. The judge determined that between 2012 and 2018, there had been "over 100 scheduled proceedings, including status conferences, pre-trial conferences, motions, and other matters," and that "at least 80 times" the matter was adjourned at defense counsel's request. While the judge acknowledged that the attorney "had health issues" and was "very busy" with "trials in many venues," the judge also stated

---

to represent defendant. Ultimately, defendant was initially allowed to represent himself with standby counsel and it was defendant appearing pro se with that counsel who argued before the trial judge on May 24, 2018.

[4] Barker v. Wingo, 407 U.S. 514, 515 (1972).

that defendant "could have had other [c]ounsel" and instead "chose to keep and retain" his attorney. Meanwhile, the judge found that "the State never requested an adjournment" and was "ready to proceed to trial, certainly within six months to a year after" the indictment was issued. The judge concluded that "the delay, over seven years, was primarily, if not solely, chargeable to the defendant." This factor weighed "if not more" than, "at least equally" to the length of the delay.

As to the third factor, the judge found that defendant had asserted his right to a speedy trial and filed a motion concerning that right. For factor four, the judge found that the seven-year delay was "prejudicial" to defendant and noted that while defendant had not been incarcerated during that time period, his "life [had] been on hold for the past seven years." However, the judge found again that the fact that defendant was not tried more quickly "was due in large part to hi[m] or his . . . attorney." The judge concluded that after balancing the four factors, defendant was not "constitutionally denied a speedy trial."

At the hearing on defendant's motion for reconsideration on June 4, 2018, the judge again said that "seven years is an inordinate delay." Moreover, the judge admitted that he had made a mistake as to the number and source of

the adjournments in the case. The judge stated there were actually seventy-five postponements of the case, and that thirty-one came from defense counsel and "one or two, if that many," from the State. The judge found that the remainder of the adjournments "were either [c]ourt calendars or for reasons unknown." Based on this corrected record, the judge again found that "most of the delays were caused by, not the defendant personally, but through his counsel." The judge did not change his ruling on the speedy trial motion.

In a June 8, 2018 pro se filing, defendant continued to argue that his speedy trial right had been violated. Throughout the remainder of the pretrial period, the trial judge maintained that trial would commence on August 6, 2018. However, on that date, defendant's new, appointed attorney [5] was unavailable, and the trial was postponed until January 22, 2019, when it in fact commenced.

B.

It is well-settled that "[t]he right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." State v. Tsetsekas,

---

[5] At a July 3, 2018 hearing, the trial judge revoked his earlier order allowing defendant to proceed pro se.

411 N.J. Super. 1, 8 (App. Div. 2009) (citing <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 222-23 (1967)). "The constitutional right . . . attaches upon defendant's arrest." <u>Ibid.</u> (alteration in the original) (quoting <u>State v. Fulford</u>, 349 N.J. Super. 183, 190 (App. Div. 2002)). Since it is the State's duty to promptly bring a case to trial, "[a]s a matter of fundamental fairness," the State must avoid "excessive delay in completing a prosecution[,]" or risk violating "defendant's constitutional right to speedy trial." <u>Ibid.</u> (citation omitted).

The right to a speedy trial is of a somewhat different character than others, because "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." <u>Barker</u>, 407 U.S. at 521. Indeed, courts have recognized that "[d]elay is not an uncommon defense tactic." <u>Ibid.</u>

The right to a speedy trial must be addressed with a careful analysis of the circumstances. <u>Id.</u> at 522. Ultimately, the trial court must weigh society's right to have the accused tried and punished against a defendant's right to be prosecuted fairly and without oppression. <u>Tsetsekas</u>, 411 N.J. Super. at 10.

"The only remedy" for a violation of a defendant's right to a speedy trial "is dismissal of the charge." <u>State v. Cahill</u>, 213 N.J. 253, 276 (2013). On appeal, "we reverse only if the court's determination is clearly erroneous."

18                                                                                      A-3443-18

Tsetsekas, 411 N.J. Super. at 10; see also State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977).

The four-part test to determine if a defendant's speedy-trial right has been violated was announced in Barker, 407 U.S. at 530-33, and adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976).[6] The test requires "[c]ourts [to] consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Tsetsekas, 411 N.J. Super. at 8 (third alteration in original) (quoting Barker, 407 U.S. at 530). "No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. at 10 (citing Barker, 407 U.S. at 533). Courts are required to analyze each interrelated factor "in light of the relevant circumstances of each particular case." Ibid.

The Barker factors to be applied by a court are "related," and "must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533. None of them standing alone is "either a necessary or

---

[6] We note that effective 2017, although not impacting defendant's claims, speedy trial claims are now subject to the considerations set forth in the Criminal Justice Reform Act, N.J.S.A. 2A:162-22(a)(2)(a).

sufficient condition to the finding of a deprivation of the right of speedy trial," and a court must "engage in a difficult and sensitive balancing process." Ibid.

Regarding the first factor, the Barker Court characterized the length of a delay between arrest and trial as a "triggering mechanism," stating that "[u]ntil there is some delay which is presumptively prejudicial," there is no need for a court to address the other three factors. Ibid. Here, it cannot be disputed that, as the trial judge found, the delay was unreasonable, especially in light of the simplicity of charges that arose from the June 28, 2011 near tragic events. See id. at 530-31; Cahill, 213 N.J. at 265-66 (recognizing that "longer delays can be tolerated for serious offenses or complex prosecutions").

The trial judge therefore correctly considered the remaining factors. In doing so, the judge was required to recognize "[a]s a matter of logic and decency, given that the four factors of Barker call for a balancing of considerations, when the delay in concluding a trial is excessively long by any measure, as here, the burden upon defendant to satisfy the other factors is correspondingly diminished." State v. Farrell, 320 N.J. Super. 425, 453 (App. Div. 1999).

Turning to the second factor, the reason for the delay, "different weights should be assigned to different reasons." Barker, 407 U.S. at 531. "A

deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "a valid reason, such as a missing witness, should serve to justify appropriate delay." Ibid. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily" against the State. Ibid. However, such a reason may still support a finding of a speedy trial violation, "because it is the government's ultimate responsibility to prosecute cases in a timely fashion." Cahill, 213 N.J. at 266.

In Barker, the Court found that seven months of delay by the prosecution due to the illness of a key witness were justifiable. Id. at 534. However, four years of continuances so that a co-defendant could be tried separately and then utilized as a witness were improper, because the prosecution repeatedly failed to try the co-defendant "under circumstances that comported with due process," lengthening the delay. Ibid.

In Tsetsekas, 411 N.J. Super. at 12, we found that the prosecution's requests for several adjournments due to scheduling issues with witnesses and problems providing discovery "were not a deliberate attempt to hamper the defense," but nonetheless supported a conclusion that the defendant's speedy trial right was violated. We noted that "[a]djournments should generally be

A-3443-18

granted to either party for legitimate reasons," but found that "<u>every rule has its limits</u>." <u>Ibid.</u> (emphasis added).

Delays caused or requested by a defendant will weigh against finding a speedy trial violation. <u>State v. Long</u>, 119 N.J. 439, 471 (1990). In <u>Long</u>, the Court held that if the State was "entirely or in large part responsible" for the delay of 971 days between the defendant's arrest and his trial for murder, "such a time delay would violate [the] defendant's right to a speedy trial." <u>Id.</u> at 469. However, the defendant had "filed numerous pretrial motions that accounted for most of" that time, particularly a challenge to the jury-selection process that led to six months delay of the trial. <u>Id.</u> at 469-71. Because there was "no indication that the prosecution intentionally delayed the proceedings to gain an unfair, tactical advantage," the Court found no speedy trial violation. <u>Id.</u> at 471.

The United States Supreme Court has held that because an attorney acts as a defendant's agent, defense counsel's requests for adjournments can be generally attributed to defendant. <u>Vermont v. Brillon</u>, 556 U.S. 81, 90-91 (2009). In <u>Brillon</u>, the Court held that "counsel's failure 'to move the case forward' does not warrant attribution of delay to the State," because "the individual counsel here acted only on behalf of [the defendant], not the State."

<span style="float:right">A-3443-18</span>

Id. at 92. The Court stated "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." Id. at 90-91 (second alteration in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).

However, in Brillon, the Court made clear that although the defendant's attorneys made requests for adjournments, the primary cause for the delay in that case was the defendant's belligerent behavior and conflict with each of his consecutively assigned counsel. He repeatedly fired and even threatened his appointed counsel, which caused delay because replacement counsel had to be appointed several times. The Court summarized the situation as follows:

> [Defendant's] strident, aggressive behavior with regard to [his first attorney] whom he threatened, further impeded prompt trial and likely made it more difficult for the Defender General's office to find replacement counsel. Even after the trial court's warning regarding delay, [defendant] sought dismissal of yet another attorney . . . . Just as a State's "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State]," Barker, 407 U.S.[] at 531, . . . so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant. Absent [defendant's] deliberate efforts to force the withdrawal of [two of his attorneys], no speedy-trial issue would have arisen. The effect of these earlier events should have been factored into the court's analysis of subsequent delay.

23

> [Brillon, 556 U.S. at 93-94 (fifth alteration in original).]

Based on the defendant's actions that prompted his various attorneys to seek delays, the Court reversed "[t]he Vermont Supreme Court[, which it found] erred in attributing to the State delays caused by 'the failure of several assigned counsel . . . to move his case forward, . . . and in failing adequately to take into account the role of [defendant's] disruptive behavior in the overall balance." Id. at 91-92 (citation omitted). Moreover, the primary danger that the Court sought to address in Brillon in the particular context of a speedy trial claim, was by attributing a public defender's delays to the State would provide a public defender with a perverse incentive to drag his or her feet and request frivolous continuances in the hopes of getting charges dismissed on speedy trial grounds. Neither the facts nor the policy implications that were key to the Court's decision in Brillon are present in the current case.

In contrast, before Brillon was decided, where delays were attributable to the court, we found in Farrell, 320 N.J. Super. at 449-50, that two postponement requests from defense counsel due to scheduling issues involving counsel's other cases were not "fairly chargeable to [the] defendant." Id. at 449. There, we stated that delays caused by the court itself may also be

24

weighed in the analysis. Id. at 450-51. "As a general rule in applying the evaluative features of the four-part test of Barker in fundamental fairness terms, delays of scheduling and other failures of the process for which the trial court itself was responsible are attributable to the State and not to the defendant." Id. at 451 (quoting Barker, 407 U.S. at 531). "When there is no reasonable explanation or justification for the excessive delay, speedy trial principles have been violated." Id. at 453.

For example, in Farrell, the municipal court adjourned the case for extended periods multiple times even after there had already been significant delays. Ibid. Though the matter involved simple charges of driving while intoxicated and failure to maintain a single lane, the court took 174 days to begin addressing the defendant's motions and did not begin the testimonial phase of the matter until it was 312 days old. Id. at 451. The court took nearly a year to complete the testimonial phase due largely to its own adjournments. Ibid. For example, when the matter was 635 days old, the court adjourned it "because of other, undefined 'administrative matters' that diverted [its] attention." Ibid. We concluded that the defendant's speedy trial right was violated because the delays were "plainly excessive" and largely due to "the

25

municipal court's patent failure to prepare itself to try the matter expeditiously and shepherd it to resolution efficiently." Id. at 452-53.

As to the third Barker factor, a defendant's assertion of the speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 532-33. For example, if the record shows that a defendant not only failed to object to continuances requested by the government but "hoped to take advantage of the delay," denial of a speedy trial motion is appropriate. Id. at 535-36. However, there is no bright-line rule that a defendant who fails to demand a speedy trial has waived the right. Id. at 528-29.

The fourth Barker factor, prejudice to the defendant, should be assessed in the light of the interests the speedy trial right was designed to protect. Barker, 407 U.S. at 532. These include "prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." Cahill, 213 N.J. at 266. The last of these is considered the most serious, as it goes "to the question of fundamental fairness." Szima, 70 N.J. at 201. However, "significant prejudice" may also be found if a delay causes a "loss of employment or other opportunities, humiliation, the anxiety in awaiting

A-3443-18

disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the 'other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances.'" Tsetsekas, 411 N.J. Super. at 13 (quoting Farrell, 320 N.J. Super. at 452).

Applying those factors here, as noted, the trial judge found the delay was inordinate, defendant asserted his speedy trial right and that he was prejudiced. However, the judge attributed the delays primarily to defense counsel and to the court, not the State or defendant individually. Yet the judge concluded that the delay would be weighed heavily against defendant because he could have pursued obtaining new counsel. That conclusion ignored the fact that defendant repeatedly raised the issue of delay, starting in at least 2014 and in 2015 his need to secure new counsel, in submissions that no judge at that time ever addressed.

The trial judge's conclusion also glossed over the State's and the court's role in what happened here. We agree there is no record evidence that much of the delay was intentionally or directly caused by the prosecution. However, there is also no evidence in the record that the State attempted to move things along faster. As the Court stated in Barker, "[a] defendant has no duty to bring

27

himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover . . . society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." Barker, 407 U.S. at 527 (footnotes omitted). And, the prosecution shares its "primary burden [with] the courts . . . to assure that cases are brought to trial." Id. at 529.

In People v. Williams, 315 P.3d 1 (Ca. 2013), cert. denied, 572 U.S. 1140 (2014), the California Supreme Court concluded that a delay in bringing a matter to trial was not attributable to the trial court. But, it described a trial court's duty to shepherd a criminal case to trial as follows:

> Thus, the trial court has an affirmative constitutional obligation to bring the defendant to trial in a timely manner. And to that end, it is entirely appropriate for the court to set deadlines and to hold the parties strictly to those deadlines unless a continuance is justified by a concrete showing of good cause for the delay. The trial judge is the captain of the ship; and it goes without saying that the ship will go in circles if the crew is running around the deck with no firm marching orders.
>
> We do not find the trial court directly responsible for the delay in this case. We caution, however, that trial courts must be vigilant in protecting the interests of the defendant, the prosecution, and the public in having a speedy trial.

28

[Id. at 40 (emphasis added) (citation omitted) (quoting State v. Couture, 240 P.3d 987, 1009-10 (Mont. 2010)).].

Here, there was very little shepherding of defendant's case to trial and the resulting delay was inordinate. Moreover, the delay ultimately resulted in his attorney of choice becoming unavailable to try the case because of counsel's progressing illness that by 2018 made it impossible for him to continue to represent defendant as he explained to the judge in detail at the March 2018 conference.

Also, and significantly, it defies all reason as to why this matter remained in the original venue when it was clear from the start that a then sitting judge from the same vicinage would at the least be likely to be a witness. Defendant recognized this reality at least by 2013 and pursued a change of venue that was not addressed and granted until 2017. Moreover, in the intervening years, while defendant certainly did not behave as a model litigant, bombarding the court with various submissions in violation of his bail conditions and pursuing his own unsupported defenses, he clearly only sought a quick resolution of his case. Yet nothing happened, motions were left unresolved and no trial was ever scheduled, or if it was, it never took place until 2019.

We are sympathetic to the judges in the Passaic vicinage who have to deal daily with a significant volume of complex criminal cases. The vicinage is home to highly populated areas giving rise to a high rate of serious crime. Moreover, we commend them for their compassion. They, like all judges, strive to deal with real-life problems confronting litigants and their attorneys, which often understandably require postponement of scheduled matters. People get sick. Lawyers have conflicts.

Having said that, we can discern no reason why this matter languished so long, other than the various judges being (correctly) sympathetic to defendant's counsel's health issues and his need to otherwise seek accommodations. But where, as here, a defendant repeatedly asserts his right to a speedy trial, even those admirable considerations by the judges had to yield, especially considering the simple nature of this matter as compared to many of the more complex pending cases on the court's docket. As we said in Tsetsekas, every rule does have its limits and here none were recognized, which prevented the matter from being tried "expeditiously and shepherd[ed] . . . to resolution efficiently." Farrell, 320 N.J. Super. at 452-53.

We commend the trial judge for hitting the ground running when this matter reached his vicinage in 2018. However, we must part company with his

30

conclusion in this matter that defendant's right to a speedy trial was not violated. The delays caused by defense counsel's personal needs were certainly not the result of the attorney acting as his client's agent where the client made it clear, not always in the most appropriate terms, that all he wanted was for the matter to be brought to conclusion sooner than later, which was in everyone's best interest.

Under these circumstances, we are constrained to vacate defendant's conviction and dismiss the indictment. For that reason, we need not address any of defendant's remaining arguments.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31                                                                          A-3443-18